Good morning, and may it please the Court, my name is Jesse Cripps. I'm appearing on behalf of Defendant and Appellant Michaels Stores. I'd like to reserve three minutes of my time. In this case, the district court applied a mechanical and inflexible rule that would allow class members to indefinitely toll the statute of limitations through the stacking of class actions, even after a district court had already definitively decided that those claims were not amenable to class action treatment. That rule runs contrary to this court's decision, and Robin, runs contrary to every circuit that's considered the issue. Tell me first whether it's California or federal law that applies to this question. Your Honor, California has applied federal law. I'm not asking you that. I'm asking you what law applies, federal law or state law? State law applies, Your Honor. California law applies. Your Honor, this court said in the Ninth Circuit decision, and if you'll give me a second, I'll get you the citation for it. I'm sorry? I'll get you the citation, Your Honor. In Retail Clerks Union Local 648 AFL-CIO v. Hub Pharmacy, Inc., Site 707 F2nd 1030, Penn Site 1033, this circuit said in 1983 that when federal courts borrow a state statute of limitations, they also apply the state's tolling law if it is not inconsistent with federal law. But this isn't exactly a tolling law, is it? Well, it is, in fact, Your Honor, an application of the tolling doctrine in American piping. It really seems to be an aspect of class action law. I mean, in fact, you know, we also have case laws saying essentially it isn't tolling law, that equitable tolling is separate. Well, Your Honor, I think it is a tolling doctrine. It's a doctrine of whether or not the statute of limitations in this case was, in fact, tolled. The only way in which the statute of limitations continues to not be expired in this case is if, in fact, it was tolled here. But don't we apply, I mean, in general, we apply federal class action rules in federal court? That's true, Your Honor. That's true. Rule 23, and under the Rules Enabling Act. So you look at this as essentially a class action rule. If you were to tell people about the viability of class actions in federal court, then it would be federal. I don't know the answer to this question, but I think it's interesting. And I kind of would like to at least know, does it matter? Well, Your Honor, I think the result is the same, both under federal and state law, because the Supreme Court in California, in Jolly, said that the California courts should look to Rule 23 and to federal procedural law in the absence of controlling state law on the issue. I think that's what we have here. This court decided in Robin, consistent with every other circuit to consider the issue, that when a class member is part of a prior class action, and that class action is adjudicated on the merits, if a court determines that those claims are not appropriate for adjudication, that the statute of limitations continues to run at that point in time. There is no successive tolling by virtue of the fact that a second class action is adjudicated. I mean, you're overstating. You could be right by inference, but that was about a second class action. It was about a second class action, as is this case. In this case, there was the first class action, the DeJoseph class action. Then there was the second class action, the Rea class action. And Plaintiff Anderson's claims requires that the filing of the second class action told the statute of limitations, continued to toll the statute of limitations on her claims. And what this court said in Robin was that when you have the successive filing of class actions, that is, the piggybacking of class actions, one on top of another, once you've voluntarily opted not to opt out of a class, but to be part of a class, and had a court determine that your claims are not appropriate for class adjudication, that you can't rely then on a piggyback or successive class action to continue to toll your claims indefinitely. That's what Robin held. And the only difference between Robin and this case is that in this case, the class action happened to have been filed by somebody else who was not part of the class action in DeJoseph, whereas in Robin, it was a putative class member that filed the action on behalf of themselves. Now, the district court in this case... What about the Catholic Social Services case? Well, Catholic Social Services, there's nothing remarkable about Catholic Social Services in this case. What Catholic Social Services says is that to the extent a court doesn't reach the merits of the class action below, doesn't determine that the class action is not appropriate for Rule 23 treatment. In that case, it was a legislative intervention that robbed the court of jurisdiction. Then in that case, they can file a second class action in order to continue to toll their statute of limitations. But there's a maximum of law here that's at issue. The mere fact that the second class action was filed by somebody else shouldn't and doesn't matter, because the maximum of law is that one should not be permitted to do indirectly that which they cannot do directly. And what this court held in Robin, as well as every other circuit that's considered the issue, is that if you file a successive class action, that doesn't operate to toll your statute of limitations. You can't piggyback a class action to continue to toll your statute of limitations. Counsel, Judge Gould, if I could interject a question, just to clarify in my mind. Yes, Your Honor. Do we have square precedent in our circuit that says that limitations are determined as a matter of state law, and also precedent that says the tolling of a limitations period is a question of state law? Your Honor, I think what we have is the decision in Retail Clerks Union, Local 648 AFL-CIO. The quote that I read you earlier, that when federal courts borrow a state statute of limitations, they also apply the state's tolling law if it is not inconsistent with federal law. That's where I'd point the court. But I believe that the result is exactly the same under both Robin or under Jolly. And I think it's important to look at, in Robin, what this court said. This court, what this court said was completely conceited. It didn't say very much, actually. It was somewhat conclusive. Well, what it said was completely consistent with what the U.S. Supreme Court said in Crown Court Conceal, which is that the statute of limitations is told, quote, only until class certification is denied. Once it's denied, it is not again told by the filing of a second successive class action. That's the principle in Robin. What you're saying, you know, has a ring of sense to it. But on the other hand, the countervailing notion would be that how is some person sitting in some, you know, in their little house who knows there's now a second class action supposed to know that they, this one is sufficiently like the last one that they're not protected? Well, Your Honor, what the court said in Crown Court Conceal was that it was, that the statute of limitations continues to run until, and if you'll give me a second, I'll find the quote for you, until the court enters an order denying class certification. On page 354 of the decision, it says the entry of an order denying class certification is the act that puts. For example, it was denied because the class representative was no good. And now there was a second class action filed with a good class representative, and no one's ever decided, suggested there's anything wrong with the class per se. Nonetheless, you would say the same thing. Your Honor. Take the same position at that point. You have to, to be consistent. Well, in Catholic social services, this court said that there are, if there are defects that don't relate to the merits of the class action, the Rule 23. That relates to the merits of the class action. I'm sorry, Your Honor? It relates to the merits of a class action, whether you have an inadequate representative, but it's not something that carries over to the next try. Well, Your Honor, I don't think that that matters here. I think there may be a difference there, but I don't think that matters here, because the court ruled both on predominance and superiority grounds that Rule 23. I understand that. How was Ms. Anderson supposed to know that? Well, Your Honor, first and foremost, this court has drawn a bright line and said that the rule in Toastie, it said the rule of tolling is one that's affected by virtue of the filing of the class action, and a different rule would lead to disputes that would devolve into questions about whether or not they had notice, whether or not their notice got lost in the mail. The fact that this was originally filed in state court could have had completely different requirements there. Your Honor, but that goes contrary to the cross-jurisdictional tolling doctrine, which this court has refused to apply. This court has said it's not willing to thrust cross-jurisdictional tolling on California courts. It says the cross-jurisdictional tolling is where plaintiffs in one jurisdiction, that is in this case California, seek to rely on a class action that was filed in another jurisdiction, that is federal courts, to toll their claims just by virtue of the fact that you have to be in front of a different judge or in a different court or in a different forum, doesn't allow you to toll your claims. And the courts in this case said, both in Clemens and in Hatfield, that the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law. So the fact that it happened to have been filed in California law makes no difference from a tolling perspective. In fact, the fact that it was filed in a different jurisdiction, that is in California, weighs in favor of not applying tolling because otherwise what you end up with, as the Hatfield court explained, as this court explained in Hatfield, is a situation in which the California courts are then the target of copycat lawsuits. So when a court decides in federal court that a class is not amenable to class certification, it makes those state courts a target for subsequent copycat lawsuits, which incidentally is what happened in this case. And what this court said is, it's not going to apply cross-jurisdictional tolling in Clemens and Hatfield because it would subject those California courts to those types of copycat lawsuits. I also think, before I reserve the remainder of my time, I'd like to mention the fact that in looking at the tolling doctrine, both under California law and under federal law, you have to look at the principles involved. You have to look at the reasoning behind American Pipe and Crown Court and what motivated the court's decision in motive. One thing is, if I can, what the state court did here actually was to certify the class except with regard to the people who had been in the earlier class. Correct, Your Honor. So he wasn't reiterating that there was anything wrong with the class actually, right? He was saying there wasn't anything basically wrong with the class as a concept. He was applying, and he said he was applying, a collateral estoppel notion. Well, she said yes. Judge Dunning said that there were collateral estoppel concerns, but there were also other motivating concerns, including the fact that a federal court had already addressed the issues that were in front of it and that these individuals should not. Right, which is the same, which is a collateral estoppel concern. Right. Well, you know, primarily a collateral estoppel concern. Your Honor mentioned the fact of notice and whether or not an individual needs to have notice. I didn't say anything about notice. Well, I'm sorry. Earlier you mentioned a question about if they're in state court, how are they supposed to know what's going on? How are they supposed to know whether or not their rights are— Right. A couple of points, Your Honor. First, there's a fiduciary obligation between a plaintiff's lawyer, a plaintiff, and the representative class. So the Crown Court Conceal Rule, which is a rule that operates to say once a court enters the order of decertification, that's when tolling stops. That rule is consistent with the Converse Rule, which is that tolling starts at the commencement of a class action regardless of whether or not somebody has notice. But these individuals had some claims for periods beyond the time of the first case, right? In other words, they had some claims for which they didn't have to have tolling on the first case. Is that right? Your Honor, this individual, Anderson, actually all of her claims relate to the period before the DeJoseph decertification. There are other individuals affected by the decision. But she wasn't out of time with regard to— Did she need the first tolling for all of her claims, for all of the weeks that she was employed? I thought not.  Did she need the first one? Yes, she needed the first one. If she had the second one, did she need the first one for everything? I thought not. Your Honor, I have not done the math on that. But by the time she did, in fact, bring her claims, I believe she did need— I thought that there were some of her claims covered weeks after the first decertification. No, that's not true as to her. That's true as to other people. Or were timely after the first certification. Well, I think what Your Honor is referring to is the fact that there were a number of individuals who were also affected by the Anderson decision. I thought she was still employed. No, she was terminated before the DeJoseph decertification. But she wasn't late. All I'm trying to say is, as I understand the facts, I could be wrong. If she'd had the second tolling, she would have had something still alive. If she had the second tolling, that's right, Your Honor. But again, if you look at the different— And not the first one. If she had only the second one. If she had the second—if she only had the second tolling, Your Honor, she needs the second tolling in order for it to be alive. She needs the piggybacking of claims. You're not listening to me. But if you look at the complaint— You're not listening to me. My understanding is, and I could be wrong, that if she had only the second tolling and not the first one, she would have some live claims. Is that wrong? No, I believe that is correct, Your Honor. Okay, that is all I've been trying to establish for the past four or five minutes. And all you had to say was yes about five minutes ago. Okay, Your Honor. So, therefore, she doesn't need the first tolling to have something alive, right? So what is she stacking? She's—Your Honor— Unless you're looking at this as the trial court did at a collateral estoppel issue. Your Honor, she did—well, she did, in fact—whether or not she needed the first class action for tolling or not, when the court determined that her claims were not appropriate for class adjudication, she was then on notice that she needed to go out and file her individual claims under Crown Cork and seal. And to rely upon a second filing of a second class action, that is contrary to the court's decision in Robin, even if her claims had extended beyond the deductions— Well, it isn't, because she doesn't need the stacking. Your Honor, I believe it's a matter of semantics, because in Jolly, with this— I'm going to have to have you answer the question and then stop. Okay, thank you, Your Honor. I'd say, in Jolly, what the court said, the California Supreme Court said, is applying the doctrine of American pipe and Crown Cork and seal. You have to look at the rationale behind it. There was no reason to incentivize people to continue to sit on their claims, including Ms. Anderson, because 138 other people at that point in time had gone out and filed individual claims. We are not protecting at that point a class action device. We are not protecting against the filing of individual claims, because in the months following the decertification of DeJoseph, the case had already devolved into a series of individual claims, so there's nothing that we are protecting at that point in time. Thank you very much. Thank you, Your Honor. May it please the Court, David Gallo on behalf of Apolli Anderson. If it please the Court, I will first give the dates that Your Honor, Judge Berzano, was asking about. The Wray action was commenced in September of 2011. California has a four-year statute on wages, so at any point in time an employer must be prepared to defend wage claims going back four years. So when the second class action was commenced in September of 2011, that means it protected pay periods from September 2007 forward. Ms. Anderson's employment concluded in August of 2008. So yes, Your Honor, if there is tolling only from the second class action, Ms. Anderson is protected. Only in part. Pardon? In part. Yes, Your Honor. Well, that's a very good point, and please let me mention this. One of the things that is unusual about a wage and hour claim is both parties agree that the question whether an employee was misclassified as exempt is determined on a workweek-by-workweek basis. But in addition to that, the actual claims arise every pay period when the overtime pay is not paid. What that means is this is not like a securities fraud case where you have one cause of action that arises and the question is how long do you have to sue in that cause of action. In this case, a new cause of action accrues every single pay period. That was the premise of all my questions, so why don't you go on. So what that means, Your Honor, is this isn't even the same case as the prior to Joseph action because there's almost no overlap in time. In fact, the number of pay periods by my calculation, the overlap is only 13.6% of the pay periods in the two cases. So they're not even the same class action. They involve different claims. This is also not under the literal Robin statement of an anti-piggybacking rule because the Wray action was brought by people who had not even been members of the prior class. Because the Wray action was in state court, we know from the Supreme Court's decision in Smith v. Bayer that a different legal question determined under a different legal standard was going to be applied for class certification. What that means is it brings it directly under the precedent of the en banc decision in Catholic Social Services where it says that a subsequent class action is permissible where it's not an attempt to re-litigate a prior denial of class certification. Smith v. Bayer says it's not an attempt to re-litigate. In fact, the March 2015 panel decision by this court in Baker v. Microsoft did exactly that. There had been a 2007 class action. It was an MDL called the Scratch to Disc cases. And the federal district judge denied certification on grounds that individual claims would predominate. Four years later, the same class action was filed by Mr. Baker in 2011. This court held that that second class action was viable and the trial court had erred in striking the class allegations because a different legal standard was going to be applied in the later case. Now, in Baker v. Microsoft, it was a different legal standard because there was an evolution in precedent. In our case, it's a different legal standard because one was in state court, one was in federal court. It wasn't in fact a different legal standard. I beg your pardon? It wasn't in fact a different legal standard. It could have been, hypothetically. I don't remember the exact wording of Baker v. Microsoft, but because of— I mean here, it was not in fact a different legal— in fact, the California courts are following the federal courts here, no? Your Honor, the California court certified the class. That proves that it was applying a different standard than had been applied by the federal judge four years earlier, four and a half years earlier. In fact, the Supreme Court in Smith v. Bayer says it's a different question, a different legal standard when you consider class certification in a state court versus a federal court. By the way, Michaels agrees. We quoted from one of their briefs to the district court where they said that it's a completely different question when you seek to litigate class certification in a state versus federal court. Have I answered Your Honor's question? I want you to. Go ahead. Also, what's unique in California practice is there's a pre-certification notice, a Bel Air West notice. This may be peculiar to California jurisprudence. Well, the district court held that people like Anderson, who are not lawyers, reasonably relied upon that to believe that their interests were being protected by the RAIA action. Also, Michaels didn't raise the issue in the state court. Let me ask you something. Yes, Your Honor. Let's leave aside for now the different time periods, right? The district judge here viewed Robin and the parallel case in California as not applicable here because it was about filing a new class action, not filing an individual action. And you keep saying that too. At that point, I don't understand. It seems to me that if these were in fact the same class action covering the same time period and you wouldn't allow it under Robin as a class action, then the second class action couldn't toll. And if it couldn't toll, it couldn't toll for your person either. Well, what the district court held, and we agree, is that there is tolling because it's reasonable for laypersons to rely upon the pendency of the second action. I understand that. But that seems like a very difficult point. If the second class action is essentially a nullity for tolling purposes, then it's just out the window. It's just not operative. Well, first of all, the en banc decision in Catholic Social Services overrules Robin to a certain extent. One other circuit commented that CSS abandoned Robin. I'm asking the court. Why? Well, because CSS held that a second class action is viable where it's not an attempt to relitigate the prior class certification. But this was an attempt to relitigate the prior class certification in terms of the character of the class. I understand it was a different time period. But otherwise, there was nothing different about the class. Your Honor, different time period is everything. We're dealing with different claims. The claims arise every two weeks of the pay period. A different claim why? It's different claims. The claims arise differently every pay period. They're not the same claims. Well, that's very conceptual and abstract. But, in fact, in terms of what you would look at to decide whether the class was viable or not, you'd be looking at the same set of considerations, i.e., do these people operate sufficiently similarly in different places that their commonality and so on. Your Honor, it's comparing the defendant's business operations and organization from 2006 versus 2011. It's not even the same company five years later. So, yeah, there are differences. But that's certainly not our strongest argument. There are basically four different theories for affirmance. One of them is the reasoning in the district court. Another one is that it is under Catholic social services. It's not an attempt to relitigate because it's plaintiffs who weren't even in the first class in a different time period, under a different legal standard and a different court system. Most importantly, Hatfield v. Halifax, in our view, is again controlling precedent because Hatfield v. Halifax finds equitable tolling being distinct from and broader than class action tolling. And the elements it required were timely notice to the defendant in the filing of the first claim, lack of prejudice to the defendant in gathering evidence to defend against the second claim, good faith and reasonable conduct by the plaintiff in filing the second claim. Notice to the defendant by the RAE complaint is not even disputed. Lack of prejudice to the defendant, as I've explained, there's a four-year limitations period in California. At any point in time, an employer must be prepared to defend wage claims going back four years. When RAE was commenced in 2011, this defendant was required to be prepared to defend wage claims going back to September of 2011. And in fact, they did it for all the other members of the RAE class. I meant to say 2007, I apologize. So there's no prejudice to the defendant because they're required at any point in time to be prepared to defend claims going back four years prior to filing. And they did that. They marshaled their evidence in regard to the other class members in RAE and we know that they did for these people too. Finally, good faith and reasonable conduct. This is where we get into the issue of actual notice of the pendency of the RAE action was provided to these people. They had a right to rely upon it. They're not lawyers. They have no way of knowing what ultimately would be determined in regard to tolling. And furthermore, when the state court excluded them from the class, they acted promptly. It took them 10 weeks to retain counsel and file suit. So they've been diligent and their conduct has been reasonable. So if you look at the actual elements for equitable tolling that were articulated in Hatfield v. Halifax, we are there four square. That is binding precedent. In addition, I... The district court said you didn't raise this issue. No, Your Honor, the district court did not say that. And in fact, we asserted equitable tolling to the district court at supplemental excerpt of record, page 573, lines 8 to 9. In addition, this is an issue of pure law. Why? Because we're here on a motion for judgment on the pleadings. So every issue before the court is an issue of pure law. And it's clearly established a basic precedent. But this really isn't an issue of pure law. It requires a bunch of facts as to... It's an equity concept. Judicially noticed facts. And if there's anything missing from the record, that's what should be determined on discovery after a motion for judgment on the pleadings. In addition, an alternative ground. So an issue of pure law should be considered where the opposing party will suffer no prejudice as a result of failure to raise the issue in the trial court, or where plain error has occurred and injustice might otherwise result. Again, we're here on a motion for judgment on the pleadings, and the words equitable tolling were in my briefing to the trial court, and I've cited to exactly where they're found. Also, there's Michael's conduct in this litigation in the Rhea case. Sorry, I'm not hearing you. I'm sorry. Michael, there's the issue of the way Michael... Look at that. Do you want to talk at all about the state court cases? Do you agree that this is state law? I agree that it is the sovereign power of the state of California to determine the outcome of the case. I agree with the limitations issues before this court, and both parties agree to that. However, I also agree with Michael's that state courts will look to federal precedent. For that reason, we anticipate this court will examine federal precedent in determining what a state court would do. That having been said, the recent decision in Falk in the state court actually... I'm sorry? The recent decision in Falk, F-A-L-K, in the state court of appeal actually favors our position because Falk quoted with approval this court's en banc decision in Catholic Social Services, and when you take the CSS rule that what's not an attempt to re-litigate is permissible, and when you add to that the U.S. Supreme Court's observation in Smith v. Bayer that it's a different legal question adjudicated under a different standard in the state court system, those two things taken together mean that Falk would hold in this case that there is tolling. I also want to add the Falk opinion expressly stated that it was not addressing equitable tolling at all, which means that California law of equitable tolling is undisturbed, and this court's holding in Hatfield v. Halifax describing and articulating the elements for equitable tolling are still good law, and that panel decision should bind this panel. In addition, let me say, talking about state law, here's a quote. Where a defendant has notice of the claims, quote, the reasons for the statute of limitations do not exist, end quote. That's a California appellate decision in Kleinecke at page 23 of our brief. There are several, several California intermediate appellate court decisions quoted in our brief around pages 22 and 23, and they talk about how notice to the defendant of claims is the primary determinant of equitable tolling of limitations. So California law very strongly favors our position on equitable tolling, both as articulated in Hatfield v. Halifax and in the other decisions we cite in our brief. Let me just regroup for a minute. What is the pertinence of the first case with regard to tolling? That's an interesting question because, in our view, because lack of prejudice is important to tolling, there's no argument that can be made that Michaels would be prejudiced by tolling from the second class action. Because, remember, when it was filed, they were supposed to... If the class in the second class action is limited to the time period that it would otherwise be limited to, and she can only get claims for that time period and not for... She might be tolled, but she can't get anything because the class isn't defined that way. Is that what you're saying? I think the answer is there's no argument defendant can make for prejudice for tolling from the second class action. Is she getting any tolling from the first class action at this point? I don't know that she needs it, Your Honor. It doesn't seem she's getting anything because, I mean, she's going to lose some of her claims that she could have gotten in the first class action, but she can't get them because the second class has defined them away. That may be a correct articulation, yes, Your Honor. I'm going to have to stop you, and I'm sorry about that. But thank you very much for your argument. Thank you, Your Honor. Your Honor, I think I was over... Well, actually, you're in the red, but I'll give you one minute. I appreciate that, Your Honor. Really one. She, to answer the court's question, she started her employment back in 2005, and that's found at ER... But she can't get anything beyond what the class is defined as, right?  All right, well, then she loses on that because she can only get... Well, or maybe the answer is that she loses on that. In other words, maybe she doesn't have any tolling from the first class action, but she still could have tolling from the second class action. Well, to get tolling on the second class action, this Court would have to overturn Robin because what Robin said was that in order for there to be tolling through two successive class actions, that is tolling through a first class action, which she is claiming, and claiming tolling through a second class action, she has to have piggybacking of claims. And imagine we said, okay, you can't piggyback, but you can get the tolling on the second class action. Why would she... Under Robin, no, her option was to file an individual claim, not to wait for a second class action to be filed. She can't rely on somebody else to do for her what she couldn't do for herself. I'd also say this Court... I'm out of time, I see, Your Honor. Thank you. Thank you very much. It's all very complicated and intriguing. Thank you both very much for your arguments. They were helpful. Anderson v. Michael Storrs is submitted and we are taking a break.
judges: Gould, Berzon, Steeh